# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

H.G. WHITTINGTON, ET AL,      §
                           §
      *Plaintiffs*,          §
                           §
v.                          §        CIVIL ACTION H-03-4507
                           §
UNITED STATES OF AMERICA,      §
                           §
      *Defendant*.          §

## MEMORANDUM AND ORDER

Pending before the court is the government's Opposed Motion for Leave to File Sur-Reply (Dkt. #55) and the plaintiffs' Motion for Class Certification (Dkt. #45). The government's motion for leave is GRANTED. After considering the parties' arguments and the applicable law, the court is of the opinion that the plaintiffs' Motion for Class Certification should be DENIED.

### Factual and Procedural Background

In the 1980's, the plaintiffs invested in farming entities in the form of limited partnerships organized by American Agri-Corp ("AMCOR"). Plaintiff H.G. Whittington was a limited partner in Pump Station III Associates and El Rancho Vineyards. Plaintiff Frederick A. Schuenaman was a limited partner in Richgrove Grape Associates. The plaintiffs reported their proportionate share of partnership losses on their 1984, 1985, and 1986 income tax returns. After an investigation, the Internal Revenue Service ("IRS") proposed to disallow the partnerships' expenses and other deductions. In response to this proposal, actions contesting the disallowance were filed in the Tax Court.

While the Tax Court cases were pending, some of the AMCOR partners settled their claims. The partners who did not settle remained subject to the Tax Court cases. Plaintiffs Frederick A.

Schuenaman and Judy B. Schuenaman ("the Schuenamans"), as well as Plaintiffs H.G. Whittington and Cynthia Whittington ("the Whittingtons"), did not settle their cases. Decisions were rendered in the AMCOR Tax Court cases on July 19, 2001, and became final on October 17, 2001. After the decisions became final, the IRS adjusted the nonsettling partners' relevant deductions pursuant to the terms of the decisions, and then assessed any resulting tax deficiencies. Both the Whittingtons and the Schuenamans then filed claims for basis refunds for the 1993 tax year—the year in which their respective partnership interests terminated. The Whittingtons filed a formal refund claim on October 30, 2001 for the amount of $22,528. At the time of the commencement of this action, however, the amount of the Schuenamans' claim was unknown. Unlike the Whittingtons' formal refund claim, the Schuenamans notified the IRS of their refund claim by sending them a copy of the Plaintiffs' Original Complaint and Jury Demand in this action (Dkt. #1) and a Form 1040X on October 17, 2003. In its March 26, 2005 Memorandum and Order ("M&O") this court found that, despite the Schuenamans not filing a *formal* refund claim, their correspondence with the IRS satisfied the informal claim doctrine, allowing their action to proceed. *See* Dkt. #26.

In that same M&O, this court explained that its jurisdiction was restricted to those AMCOR partners who had filed refund claims. *Id.* Specifically, the court held that the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, § 402, 96 Stat. 324 (1982) (codified at 26 U.S.C. §§ 6221-6233) does not provide an exception to the general rule under 26 U.S.C. § 7422 that a tax payer must exhaust administrative remedies in order to effectuate a waiver of the government's sovereign immunity. In the M&O the court also rejected as premature the government's request to deny class certification, which was based solely on the alleged failure of the plaintiffs to identify the number of potential class members who had satisfied the jurisdictional

requirement.  At that time, the court noted that it would be more appropriate to consider the class

certification issues when all of the remaining class certification issues were briefed and before the

court.

The plaintiffs filed their Motion for Class Certification on February 3, 2006 (Dkt. #45).  In

it, the plaintiffs seek certification of a class to be defined as follows:

> Those AMCOR limited partners whose basis in their partnership interest was adjusted
> as a result of either (i) a partnership-level TEFRA Tax Court case, or (ii) a Form 870-
> P(AD) settlement agreement, *and* who did not sell their partnership interest, *and* who
> filed refund claims, either formal or informal, *and* who have not received either a
> federal tax refund or credit in the tax year their partnership interest terminated based
> on an ordinary loss in the amount of their adjusted basis.

After an agreed extension of the submission date, the government filed its response in opposition to

class certification on May 1, 2006 (Dkt. #48).  The plaintiffs filed a reply to the government's

response on June 30, 2006 (Dkt. #54), and a surreply was filed by the government on July 7, 2006

(Dkt. #56).

## Discussion

Class certification analysis is governed by Federal Rule of Civil Procedure 23.  A class action

may be certified only if the four requirements of Rule 23(a) are satisfied, as well as at least one of the

requirements of Rule 23(b).  Under Rule 23(a), the party seeking certification must demonstrate the

following:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are
> questions of law or fact common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir.

2001).  In addition, a plaintiff seeking to certify a Rule 23(b)(3) class action must also show that "the

questions of law or fact common to the members of the class predominate over the questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *see also Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003). Alternatively, a plaintiff seeking to certify under Rule 23(b)(1)(A) must demonstrate that the prosecution of separate actions by or against individual members of the class would establish incompatible standards of conduct for the party opposing the class. FED. R. CIV. P. 23(b)(1)(A); *see also Corley v. Entergy Tech. Holding Co.*, 152 Fed. Appx. 350 (5th Cir. 2005).

A district court has great discretion in determining whether to certify a class action. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). In making the determination whether the Rule 23 requirements have been satisfied, a court should look beyond the pleadings in order to "understand the claims, defenses, relevant facts, and applicable substantive law." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003) (internal quotations omitted). However, any inquiry beyond the pleadings is only to determine whether certification is proper, and therefore, a court should be careful not to delve into the merits of the case. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974) ("'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'") (quoting *Miller v. Mackey Int'l*, 452 F.2d 424, 426 (5th Cir. 1971)). Finally, the party seeking class certification bears the burden of proving that class certification is appropriate. *Berger*, 257 F.3d at 479 n.4.

## I.  Rule 23(a) Requirements

### A.  Numerosity

Rule 23(a)(1) permits class action treatment only when "the class is so numerous that joinder of all class members is impracticable." FED. R. CIV. P. 23(a)(1).  The plaintiffs assert that joinder is impracticable for several reasons, including the size of the class, the size of the individual claims, and the fact that the class members are geographically dispersed.  As to the class size, the plaintiffs offer "on information and belief" that the number of individual AMCOR partners is between 1,500 and 2,000, of which approximately 520 (roughly one-third) have been represented by the plaintiffs' current counsel.  The plaintiffs indicate that approximately 170 of those 520 appear to satisfy the requirements of a putative class member.  Of the 170, thirty-five of the putative class members reside within the Southern District of Texas, while the remaining individuals reside in thirty-one states, plus the District of Columbia, Guam, and England.  The plaintiffs contend that "it is reasonable to assume that the same ratio might apply for the other two-thirds of the AMCOR partners, i.e. 170 per third for an upper estimate of 510 possible class members." Dkt. #45, p. 11.  Finally, the plaintiffs settle on a prospective class estimate of 300-400 members.

Regarding the plaintiffs' numerosity claim, the government contends that (1) plaintiffs' class size is too speculative; (2) civil actions for tax refunds may only be brought in the district in which the taxpayer resides, thereby excluding the majority of the class members; and (3) plaintiffs have not shown that the putative class meets the jurisdictional requirement imposed by 26 U.S.C. 7422(a). The court will address each argument below.

First, the government alleges that the plaintiffs' estimate of the class size is too speculative. "To satisfy the numerosity prong, 'a plaintiff must ordinarily demonstrate some evidence or

reasonable estimate of the number of purported class members.'" *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). However, pure "[s]peculation as to the number of parties involved is not sufficient to satisfy the requirements of Rule 23(a)." *Fisher v. United States*, 69 Fed. Cl. 193, 198 (2006). In *Fisher*, the court rejected the plaintiff's assertion that "if only ½ of one percent of a potential 50,000,000 policyholders filed refund claims, that would still be 250,000 claimants." *Id.* at 198. The court in that case found that the plaintiff had failed to provide evidence that even a single prospective class member other than himself existed." *Id.* at 199.

Here, the plaintiffs have offered some similar calculations;[1] however, unlike the plaintiff in *Fisher*, these plaintiffs have concrete evidence upon which to base their estimates. Attached to the plaintiffs' Reply is a list of over 120 individual AMCOR partners who have filed formal refund claims, many of them founded on basis refund claims from multiple partnerships.[2] Also included is a list of over fifty AMCOR partners who currently have pending lawsuits arising from the denial of their formal basis refund claims.[3] Included in both of these lists is the amount of each partner's claim. Over fifty of the claims are under $5,000, while the majority listed are under $10,000.

---

[1] In their motion, the plaintiffs allege that class counsel has represented 520 of the 1500-2000 AMCOR partners (roughly one-third). Of these 520, 170 appear to meet the class definition. The plaintiffs assert that "it is reasonable to assume that the same ratio might apply for the other two-thirds of the AMCOR partners, i.e. 170 per third for an upper estimate of 510 possible class members." (Dkt #45, p. 11)

[2] Dkt. #54, Ex. 5

[3] These lawsuits are currently pending before the United States Court of Federal Claims and the United States District Courts for the Southern District of Texas, the Western District of Texas, the Eastern District of Louisiana, and the Middle District of Louisiana. Only one of the cases listed is currently active—the rest have been stayed or administratively closed.

The modest value of the individual claims weighs in favor of finding numerosity. When determining whether joinder is impracticable, the smaller the size of the claim, the less likely a plaintiff would be willing to pursue the inconvenience of litigating the suit individually. *See Abrams v. United States*, 57 Fed. Cl. 439, 440-441 (2003) ("This court [] consider[s] the size of potential awards in deciding whether to certify a class. That is, whether individual claims are so small that affected [plaintiffs] would be unlikely to pursue them.")(internal citations omitted). While these lists are compiled from only about one-third of the possible class members, the composition of that third (170 out of 520) suggests that the other two-thirds will likely have similar proportions. Therefore, the court finds that the plaintiffs have gone beyond the level of pure speculation rejected by the court in *Fisher* and provided what is required of them—"some evidence or a reasonable estimate of the purported class size." *James*, 254 F.3d at 570.

In its second objection to numerosity, the government claims that class certification is inappropriate for all prospective members except those thirty-five living within the Southern District of Texas. Dkt #48, p. 6-7. In support of its contention, the government cites 28 U.S.C. § 1402(a)(1), which provides that any civil action in a district court against the United States may only be prosecuted in the judicial district where the plaintiff resides. 28 U.S.C. § 1402(a)(1). Section 1402(a)(1) is a venue provision, and while it may be controlling here with regard to each *named* plaintiff, the government misconstrues the statute's reach as to unnamed putative class members. The Fifth Circuit has held that venue restrictions in class action suits are inapplicable to unnamed members of the putative class. *See Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 490 (5th Cir. 2003) (stating that "the relevant venue question in a class action is whether venue is proper as to the parties representing, and in effect standing in for the absent class members."). Because the Whittingtons and

7

Schuenamans, the representative parties in this case, both reside within the Southern District of Texas, the court finds that the venue requirements of § 1402(a)(1) have been satisfied.

Finally, the government claims that the plaintiffs have failed to meet the required showing of numerosity because they have failed to prove that potential class members satisfy the jurisdictional prerequisites of 26 U.S.C. § 7422(a), which the government claims are "irrevocably intertwined" with the numerosity requirement imposed by Rule 23(a). Specifically, the government argues that there are two jurisdictional requirements that each potential class member must undertake before joining the action: (1) they must file an adequate administrative claim for a refund; and (2) they must pay any tax deficiencies assessed against them.

Section 7422(a) requires that "no suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been filed" with the IRS. Furthermore, § 7422 operates in conjunction with 28 U.S.C. § 1346(a)(1), a statute providing the district courts with original jurisdiction over claims "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a)(1). Together, these statutes provide a waiver of sovereign immunity in tax refund suits so long as the taxpayer has both filed an administrative refund claim and paid the full amount of an assessed income tax deficiency. *See Shanbaum v. United States*, 32 F.3d 180,182 (5th Cir. 1994).

The plaintiffs' overall class estimate, as described above,[4] is composed of putative members who have already satisfied the first jurisdictional prerequisite of § 7422(a) by filing formal

---

[4] *See Supra*, pp. 4-5.

administrative claims for refunds.  The plaintiffs have presented the court with a list of over 120 AMCOR partners who have filed formal administrative claims and a list of more than fifty partners involved in pending litigation regarding denied formal claims.[5]  These lists form the basis for the plaintiffs' estimates of the potential class size.  It appears to the court, therefore, that the plaintiffs have presented a sufficient number of potential class members who have exhausted their administrative remedies.[6]

The government's other jurisdictional concern is that the plaintiffs have not demonstrated that potential class members have paid any tax deficiencies assessed against them before filing suit.  The United States Supreme Court has characterized this policy as "pay first and litigate later." *Flora v. United States*, 357 U.S. 63, 75 (1958), *aff'd on reh'g, Flora v. United States*, 362 U.S. 145 (1960).  In *Flora*, a taxpayer paid only a portion of the deficiency assessed for one year and then attempted to bring an action to recover the portion paid.  *Id.*  The Court, in rejecting the plaintiff's attempt, interpreted 28 U.S.C. § 1346(a)(1) to require "full payment of the assessment before an income tax refund suit can be maintained in Federal District Court."  *Flora*, 362 U.S. at 177.   In holding that full payment was required, the Court acknowledged that " . . . the nature of the income tax [] is 'a tax . . . imposed for each taxable year.'" *Id.* at 149.  "There is no provision for refund to the taxpayer of any excess payment of any installment or part of his tax, if the whole tax *for the year* has not been paid."  *Id.* at 168 (emphasis added).

---

[5] Dkt. #54, Ex. 5.

[6] *See infra* pp. 14-15 for a discussion of the government's concerns regarding informal claims.

The facts in this case are unlike those in *Flora*. In *Flora*, the Court concerned itself only with the tax year at issue—the year for which the refund was being claimed. In the case at bar, however, the government alludes to potential tax deficiencies arising from the audited years 1984, 1985, and 1986. Yet refunds are not being claimed for these years. The government does not contend that the putative class has unpaid deficiencies arising from the years in which the AMCOR partnerships terminated and for which a refund is claimed (in the plaintiffs' case 1993). Rather, the government seems to be alleging that this court's jurisdiction cannot be invoked when there is *any* outstanding tax deficiency by a class member, even though the taxes for the refund year have been paid.

The court finds that *Flora* teaches otherwise, and lower courts, when faced with questions of liability for multiple tax years, have held similarly. *See Magnone v. United States*, 733 F.Supp. 613, 616 (S.D.N.Y. 1989), *aff'd*, 902 F.2d 192 (2d Cir. 1990) ("Indeed, a taxpayer who owes back taxes for several years may pay interest on and sue with respect to only one of them."). It appears, therefore, that the key to evaluating subject matter jurisdiction under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422(a) is whether the taxpayer has paid the "full tax liability assessed by the IRS for [that] specific year." *Id*. The court agrees with the plaintiffs that any deficiencies from the tax years 1984, 1985, or 1986 are irrelevant to the specific year in question for which a refund is being claimed.[7]

Under these facts and the relevant case law, the plaintiffs have met their burden of establishing numerosity.

---

[7] The court is not moved, however, as to the plaintiffs' resurrected argument that because this is a TEFRA action, "different rules apply." The court has already addressed and rejected the possibility of a TEFRA exception to the jurisdictional requirements of 26 U.S.C. § 7422(a). *See* Dkt. #26. In their current pleadings, the plaintiffs fail to specifically state what the "different rules" are, fail to substantiate them with any case law or statutory rule, and fail to show how these arguments differ from those already rejected by this court.

10

**B.  Commonality**

Commonality is not difficult to prove and only requires a showing that "'there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen*, 186 F.3d at 625 (quoting *Lightbourn v. County of El Paso*, 118 F.3d at 421, 426 (5th Cir. 1997)).  The commonality requirement of Rule 23(a) is aimed at  "'determining whether there is a need for combined treatment and a benefit to be derived therefrom.'"  *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (quoting *In re Agent Orange Prod. Liab. Litig.*, 506 F. Supp. 762, 787 (E.D.N.Y. 1980)).  Thus, "[i]t is not every common question that will suffice . . . . What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998).

The plaintiffs assert that all class members are AMCOR partners who, as a result of either the TEFRA partnership-level Tax Court cases or the settlement agreements reached in those cases, had their partnership deductions adjusted by the government.  Those adjustments resulted in basis increases in the individual partnership interests.  Whether settled or unsettled, each partner was issued a Form 4549: Income Tax Examination Changes by the IRS showing the adjustments made.  Included with the form was a statement that the IRS would allow refund claims for the increased loss in the partnership basis.  However, these claims were only to be allowed if treated as a capital loss on the sale of the individual's partnership interest, not as an ordinary loss.  The plaintiffs assert that the IRS's common course of conduct in denying ordinary loss treatment of basis losses taken on refund claims was in error, resulting in a common injury to all prospective class members.  As such, this poses a legal issue common to all:  whether ordinary loss treatment would have been proper.  In light of this common issue and the minimal burden imposed by the Fifth Circuit to satisfy this requirement, the

court finds that the plaintiffs have established the commonality requirement of Rule 23(a). *See Lightbourn*, 118 F.3d at 426.

### C. Typicality

Typicality "'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Mullen*, 186 F.3d at 625 (quoting *Lightbourn,*118 F.3d at 426). Class representatives must have "'the same interest and suffer the same injury'" as all other members of the class, *Anderson v. Kutak, Rock & Campbell*, 51 F.3d 518, 522 (5th Cir. 1995) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974)), although this does not mean that the claims of the putative class members must be absolutely identical. *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351 (11th Cir. 2001). It is sufficient that "'the named representatives' claims share the same essential characteristics as the claims of the class at large.'" *Id.* (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000)). While in this case there may be a difference in the determination of the plaintiffs' damages from those of the class they seek to represent, the same injury is involved (the plaintiffs allege they were wrongfully denied ordinary loss treatment of their basis loss) and the same interest affected (the plaintiffs seek a refund of tax allegedly overpaid) as that of the proposed class. Considering that the threshold requirement for typicality, like commonality, is not high, the court concludes that this requirement has been met. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993).

### D. Adequacy

Rule 23(a)(4)'s adequacy requirement has two components: the adequacy of class counsel and the adequacy of the class representatives. *Berger*, 257 F.3d at 479. The Fifth Circuit has held that "[t]he adequacy requirement mandates an inquiry into the zeal and competence of the

representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). In addition, "[t]he adequacy inquiry also 'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Id.* at 479-80 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

The named plaintiffs in this case have submitted affidavits asserting that they understand they are representing a class, are willing and able to do so, and plan to actively and zealously participate in and control the litigation. Additionally, the plaintiffs aver that they have no interests in conflict with, or antagonistic to, the other potential class members and that their asserted claims are typical of those belonging to the unnamed class.[8] Since the court can anticipate no antagonism within the proposed class that would prohibit its certification, the court finds the named plaintiffs to be fair and adequate representatives for the class as a whole.

The government has challenged the adequacy of the plaintiffs' two-member representative counsel, Teresa J. Womack and Sallie W. Gladney of Redding & Associates, P.C. The government contends that the plaintiffs' attorneys, who have never been appointed class counsel, have not sufficiently established that the three-person firm could handle a class of up to 2,000 potential members. When evaluating adequacy, an essential concomitant is that the party's attorney be qualified, experienced, and generally able to conduct the proposed litigation. *Carpenter v. Hall*, 311 F. Supp. 1099, 1114 (S.D. Tex. 1970). The requirement that class counsel be experienced means that "they are experienced in the type of litigation involved in this cause," *id.*, but not necessarily that they

---

[8] *See* Dkt. #53, Ex. 1: Affidavit of H.G. Whittington and Affidavit of Frederick A. Schuenaman.

13

have handled class actions in the past.  While this would be Ms. Womack and Ms. Gladney's first lawsuit as appointed class counsel, the court recognizes that Ms. Womack, Ms. Gladney, and the firm of Redding & Associates have extensive experience representing individual partners in TEFRA and AMCOR related litigation—litigation spanning multiple districts and encompassing multiple parties.[9] As the court has previously noted, the plaintiff's attorneys either currently represent or have already represented approximately 520 AMCOR partners (potential class members) in AMCOR and TEFRA related litigation.  Therefore, despite the government's concerns that the small firm cannot handle the potential class size and that they have no class action experience, the court finds the plaintiffs' counsel sufficiently qualified, experienced, and able to competently represent the putative class.  *See Klender v. United States*, 218 F.R.D. 161, 166 (E.D. Mich. 2003) (finding two-member class counsel adequate based on their respective ten years experience in tax law—and despite their complete lack of experience as class counsel).  The adequacy requirement of Rule 23(a)(4) has been met.

## II.  Rule 23(b)(3) Requirements

In addition to meeting class certification requirements under Rule 23(a), the plaintiffs' proposed class must also satisfy the requirements of one of the three subsections of Rule 23(b).  Here, the plaintiffs propose that certification is appropriate under Rule 23(b)(3) and alternatively, under 23(b)(1)(A).  Certification under Rule 23(b)(3) is appropriate if (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

---

[9] In fact, the court notes that the three-member firm of Redding & Associates focuses its legal practice primarily on TEFRA partnership related litigation and has ten years experience representing AMCOR partners before the IRS and various courts in the Fifth, Second, Eighth, and Federal Circuits.

### A. Predominance

The government contends that the plaintiffs have failed to meet the requirements of Rule 23(b)(3) because individual issues predominate the litigation.  The court agrees.  Specifically, the government asserts that class action treatment would demand individual scrutiny into whether each member could establish that they (1) meet the jurisdictional prerequisites to show a waiver of sovereign immunity; (2) meet the requirements of the informal claim doctrine (for those members who did not file formal administrative claims), (3) filed suit within the applicable statute of limitations for the correct year, (4) meet the tests for either abandonment or worthlessness (allowing them to claim their lost basis as an ordinary loss), and (5) are entitled to the refunds (if successful) when reviewing other items on their returns.  Although the court believes that certain issues could be addressed by drafting the class definition differently, other issues are more problematic and will be addressed below.

### 1. Informal Claims

In addition to AMCOR partners who filed formal administrative claims, the plaintiffs have included in the class definition any AMCOR partners who have filed informal administrative claims for refunds.  The informal claim doctrine, however, presents the court with numerous issues that would demand individual inquiry.  As discussed in the court's March 26, 2005 M&O, the informal claim doctrine has been endorsed by both the Supreme Court and the Fifth Circuit. *See United States v. Kales*, 314 U.S. 186, 194 (1941); *PALA, Inc. Employees Profit Sharing Plan and Trust Agreement v. United States*, 234 F.3d 873, 877 (5th Cir. 2000).  Whether such informal claims are sufficient, however, is evaluated on a case-by-case basis, "with a view towards determining whether under [the individual facts of the case] the Commissioner knew, or should have known, that a claim was being

made." *PALA, Inc.*, 234 F.3d at 877 (internal citations omitted).  It is this process that makes application of the informal claim doctrine to the proposed class inappropriate.

When evaluating the Schuenamans' informal claim, this court found that the informal correspondence between the Schuenamans and the IRS had been "filed within the statutory period, [put] the IRS on notice that the taxpayer believe[d] erroneous tax [had] been assessed, and describe[d] the tax and year with sufficient particularity to allow the IRS to undertake an investigation." *Id.*  Requiring this kind of individualized determination for every informal claim member would  saddle the court with more individual issues than is appropriate under 23(b)(3).  This is especially true considering that, at this point in the litigation, the plaintiffs have not identified how many prospective class members have filed informal claims.  In fact, the court notes that of the two representative plaintiffs in this case, one is proceeding under the informal claim doctrine. Accordingly, the court concludes that including plaintiffs proceeding with informal claims in the proposed class results in individual issues predominating and thus, class certification is inappropriate under 23(b)(3).[10]

### 2. Abandonment or Worthlessness

The court finds that although the putative class meets the commonality requirement of Rule 23(a), determining whether ordinary loss is appropriate for each partner requires an investigation into each partner's disposal of their partnership interest.  The plaintiffs assert that "[a] loss incurred on the abandonment or worthlessness of a partnership interest is an ordinary loss if sale or exchange treatment does not apply." Dkt. #1 (citing Rev. Rul. 93-80 1993-2 C.B. 239).  Without addressing

---

[10]The court's finding that informal claim members are inappropriate class members under Rule 23(b) does not affect its finding of numerosity under 23(a).  Plaintiffs have already shown sufficient numerosity of formal claim members through the exhibits attached to their Reply.  *See* Dkt. # 54, Ex. 5.

the merits of the plaintiffs' arguments, the court finds that even if the plaintiffs have excluded from the class those AMCOR partners who sold their partnership interest, there are still issues as to whether each prospective class member meets the objective and subjective tests of abandonment and worthlessness as described by the Fifth Circuit.  *See Echols v. C.I.R*, 935 F.2d 703 (5th Cir. 1991). According to *Echols*, in establishing abandonment, the court must "consider the facts surrounding the Taxpayers' abandonment of their interest in the Partnership."  *Id.* at 706.  The court looks to whether "the abandoning party [manifested] an intent to abandon their interest by some overt act or statement reasonably calculated to give a third party notice of the abandonment." *Id.*

Worthlessness, on the other hand, requires a court to "determine *subjectively* just when it was that the Taxpayers deemed their Partnership interest worthless, then determine *objectively* whether that interest was valueless at such time."  *Id.* at 707 (emphasis in the original).  This evaluation as to *when* a partnership interest was deemed worthless is especially important in the context of this case because it will determine the year for which a refund is claimed.  However, these determinations cannot be made class-wide.  If certified, each class member would have to prove that they are entitled to ordinary loss treatment of their basis refunds by showing either abandonment or worthlessness of their partnership interest in a particular year.

### 3.  Damages

Finally, adding to the proposed class's share of individualized issues are the damage assessments that would be required for each class member, assuming liability was established.  While this issue, standing alone, is not determinative of the court's decision to reject class certification, when combined with the preceding concerns, it renders effective management of this litigation impracticable.  Assuming the class succeeded at trial, this court would have to determine how the

17

finding of liability affected each of the class members and his or her individual income tax returns. At that point, "the taxpayer's entire tax liability under the particular tax return at issue is open for redetermination." *Fisher v. United States*, 69 Fed. Cl. 193, 202 (2006).  The  IRS would be allowed to audit the taxpayer's return to determine if there are any "set-offs" available to offset the potential refund.  *Id.* at 204.

This policy contributed to early court decisions finding tax refund claims "generally disfavored" as class actions.  *See Saunooke v. United States*, 8 Cl. Ct. 327, 329-30 (1985) ("This case is particularly ill-suited for class certification by virtue of its status as a tax refund claim.") As the plaintiffs indicate, however, more recent jurisprudence reveals "class certification is [not] necessarily precluded in tax refund actions." *Fisher*, 69 Fed. Cl. at 204; *see also Appoloni v. United States*, 218 F.R.D. 556 (W.D. Mich. 2003); *Klender v. United States*, 218 F.R.D. 161 (E.D. Mich. 2003) *modified by* 218 F.R.D. 551 (2003).  In both *Appoloni* and *Klender*,  the courts for the Western and Eastern Districts of Michigan, respectively, certified classes of taxpayers seeking refunds for amounts they claimed were wrongfully withheld under FICA.  The courts in those cases determined that a class action for tax refunds may be appropriate "where it is the most fair and efficient method of resolving a dispute," *Appoloni*, F.R.D. at 560, and that once the common issue of liability is decided, individualized damage assessments could be determined by the use of a special master or other reasonable method, such as decertification of the class.  *See Klender*, 218 F.R.D. at 168.

The *Appoloni* and *Klender* cases are unlike the case at bar in that they both deal with a singular common issue of liability—namely, whether payments class members received for their rights of tenure and just cause employment were properly treated as wages and taxed under FICA.  Here,

18

there is a common issue as well—whether AMCOR partners who abandoned or deemed their partnership interests worthless should have been subject to ordinary loss treatment of their lost basis. However, as discussed above, the question of *if* and *when* those interests were abandoned or deemed worthless is subject to individual scrutiny. Likewise, in *Fisher v. United States*, a case the plaintiffs suggest supports class action treatment, the court found that even though class actions in tax refund cases are not necessarily precluded, it is unclear whether the potential alternative of decertifying a class for purposes of determining individual damages would ultimately achieve significant efficiencies over separate actions being brought by each prospective plaintiff. *Fisher*, 69 Fed. Cl. at 204. This is precisely the concern of the court here. Ultimately, there are too many questions that require individual scrutiny for each prospective class member. As a result, the court concludes that common questions of law or fact do not predominate this action, and the plaintiffs have therefore failed to meet their burden under Rule 23(b)(3).

### B. Superiority

Under Rule 23(b)(3), a class action must also be superior to other available methods for the fair and efficient adjudication of the controversy. The court finds that for the reasons explained above, a class action in this case is not superior to individual methods of adjudication. While this case presents legal and factual issues that are similar among potential class members, the court finds that there are too many individual issues, the resolution of which would consume the litigation and eliminate any efficiency that could otherwise be gained through certification.

### III. Rule 23(b)(1)(A) Requirements

Certification under Rule 23(b)(1)(A) is also inappropriate. Under Rule 23(b)(1)(A), class certification is appropriate if the plaintiff can demonstrate that the prosecution of separate actions by

or against individual members of the class would establish incompatible standards of conduct for the party opposing the class.  The government contends that certification under Rule 23(b)(1)(A) is only appropriate when plaintiffs are seeking equitable relief.  The plaintiffs acknowledge that certification under this provision most often involves injunctive relief action, but insist that this case falls under an established exception to this general rule.  According to plaintiffs, Rule 23(b)(1)(a) also allows certification in cases where a party is obliged by law to treat the members of the class alike or where the party must treat all alike as a practical necessity.  *See* Dkt. #54, p. 28 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)).

The court agrees with the plaintiffs that certification under Rule 23(b)(1)(A) may be appropriate in certain cases where plaintiffs seek only money damages.  *See generally In re Enron Corp.*, No. MDL 1446, Civ.A. H-01-3913, 2006 WL 1662596, *19 n.26 (S.D. Tex. June 07, 2006) (listing cases and discussing disagreement among various courts as to applicability of Rule 23(b)(1)(A) to cases involving money damages).  As one court has explained,

> Rule 23(b)(1) clearly embraces cases in which the party is obliged by law to treat the class members alike . . .  [,] including claims seeking money damages.  In such cases the class members by definition have highly similar interests and generally are seeking damages and the enforcement or prohibition of some course of conduct by the opposing party that affects all of them much the same way. As a result, basically only one recovery is sought and the determination of the overall amount and the sum due each class member is not difficult.

*Id*. (internal quotations omitted) (citing *Turner v. Bernstein*, 768 A.2d 24, 32 (Del. Ch. 2000) (citing 7A Charles Alan Wright, Arthur R. Miller, & Mary Kane, Federal Practice and Procedure §§ 1772 at 421-26, 1773 at 433-34, and 1789 at 41 (1986 and 2000 Supp.))).  As the court explained above, however, this case does not merely involve one recovery.  Moreover, the determination of the overall amount and the sum due each class member would be very difficult.  The

government is only obliged to treat class members similarly to the extent that the class members'
individual circumstances are the same.   In the court's view, therefore, these are not the circumstances
contemplated by courts recognizing the exception to the general rule that Rule 23(b)(1) certification
be limited to those cases involving equitable relief.

### Conclusion

Based on the foregoing discussion and analysis, Plaintiffs' Motion for Class Certification is
DENIED.

Signed at Houston, Texas on August 4, 2006.

_____
Gray H. Miller
United States District Judge

21